RECEIVED

NOV 0 7 2005

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURTS

IN THE UNITED STATES DISTRICT COURT FOR THE

NORTHERN DISTRICT, EASTERN DIVISION

219 SOUTH DEARBORN STREET

CHICAGO, IL 60604

SHREE M. AGRAWAL, K-69779,

05C 6367

JUDGE PALLMEYER

Plaintiff,

MAGISTRATE JUDGE
GERALDINE SOAT BROWN

Against

ANDREW W. LAMBERTSON, KENNETH R. BRILEY, Chaplain
PETERSON, ANTHONY DAVIS, AWP CATCHING, GEORGIA
SCHONAUER, CARMEN RUFFIN, WARDEN JONATHAN R. WALLS,
WARDEN EUGENE MCADORY, WARDEN CHARLES L. HOUSLEY,
WARDEN ALAN UCHTMAN, DEBI MIDDENDORF, TYONE
MURRAY, JERRY GOFORTH, CHAPLAIN STEVE KEIM, J. WINTERS
CESS III, AWP WM. R. SPILLER, F. LAWRENCE CC II, MAYOR
JAENKEE, MAJOR MAUE, MAJOR MARTIN, DONALD N. SNYDER JR.,
DIRECTOR ROGER E. WALKER JR., ANDREW N. WILSON,
MICHAEL R. COCEL, BRIAN K. FAIRCHILD, CEDE DIEREKES,
LIEUTENANT C. PARNEL, JOHN DOE I, JOHN DOE II, JOHN DOE
III, JOHN DOE IV, JOHN DOE X, JOHN DOE VI, JOHN
DOE VII, JOHN DOE VIII, JOHN DOE IX, JOHN DOE X,
JOHN DOE XI,

Defendants.

COMPLAINT UNDER THE CIVIL RIGHTS ACT

42 U.S.C. § 1983

JURY TRIAL REQUESTED

## I. PREVIOUS LAWSUITS

1. I am plaintiff in Agrawal v. Bailey, et al., case No. 02 C 6807 in Federal District Court For Illinois, Northern District, Eastern Division, ~~the~~

2. In Agrawal v. Bailey, et al case No. 02 C 6807 (a) Shree M. Agrawal, K-68770 is plaintiff; (b) Kenneth R Bailey, et ~~al~~ Chaplain Peterson, and Anthoney Davis are defendants; and (c) Honorable Rebecca R. Pallmeyer is judge.

3. Agrawal v. Bailey, et al. was filed in September 2002 and is still pending before court.

4. Plaintiff's motion for leave to file supplemental complaint was denied by Judge Pallmeyer in Agrawal v. Bailey, et al, on 8-3-2005.

## II. PLACE OF PRESENT CONFINEMENT

1. Menard correctional center,
   P. O. Box 711
   Menard, IL 62259

2. (a) Available of administrative grievance procedure
   (b) has been exhausted. All the grievances were denied by the facility wardens and/or their designee on the behalf of wardens. (c) all grievance appeals were denied by the Director of IDOC and/or their designee on the behalf of the Director of IDOC.

## III. PRELIMINARY STATEMENT

1.　　This is a complaint for civil right action filed by shree M Agrawal, a state prisoner, for damages under 42 U.S.C. § 1983, alleging conspiracies of (a) forgery, (b) fraud, (c) extortion with threat, (d) robbery, (e) obstruction in plaintiff's effort to exhaust administrative Grievance Procedure, (f) violation of Department Rules, (g) violation of Plaintiff's rights under Equal Protection of law, due process of law and plaintiff's right to exercise his religion freely as a part of a grand conspiracy of official misconduct for violation of prisoners' legal rights including legal rights of p Plaintiff and for an appropriate injunction order to protect Plaintiff from violation of his civil rights by prison officials in future. Plaintiff also alleges that 735 ILCS 5/13-202.1 is unconstitutional and is designed and is being used for the purpose of extortion of a favorable settlement with threat to inform victims of convicted plaintiffs if they would demand in settlement or win in trial damages more than $500.$\frac{00}{100}$ against IDOC employees.

2.　　This court has jurisdiction over the plaintiff's claims under 28 U.S.C §§ 1331 (a), 1343, 42 U.S.C. §§ 1983, 1985, 1986, 18 U.S.C. § 1951.

## IV. PARTIES

1. Plaintiff Shree M. Agrawal ("Agrawal") is in the custody of IDOC. During the period relevant to this complaint he was housed at SCC and MCC facilities of IDOC. He was also plaintiff in Agrawal v. Bailey, et al., case no. 02 C 6807.

2. Defendant Andrew W. Cambertson ("Cambertson") was employed as Assistant Attorney General of Illinois by the office of Attorney General of Illinois at 100 West Randolph Street, 13th Flr., Chicago, IL 60601 during the period relevant to him in this complaint. Mr. Cambertson was responsible for defending Mr. Bailey, Chaplain Peterson, and Mr. Davis in case no. 02 C 6807.

3. Defendant Kenneth R. Bailey ("Bailey") was employed as warden and CAO of SCC and he was a defendant in case # 02 C 6807 during the period relevant to him in this complaint. As CAO of SCC he was overall incharge of SCC.

4. Defendant Chaplain Peterson was employed as a chaplain at SCC facility and also was a defendant in case no. 02 C 6807 during period relevant to him in this complaint.

5. Defendant Anthony Davis ("Davis") was employed as personal property officer at SCC facility of IDOC and

was also a Defendant in case No. 02 C 6807 during the period relevant to him in this complaint. He was incharge of Personal Property office during that period.

6.  Defendant Catching was employed as Assistant Warden of Programs ("AWP") at SCC facility of IDOC during the period relevant to him in this complaint and was authorized by Warden Bailey to review all inmate grievances and sign Kenneth R. Bailey where Warden's ~~respons~~ signature on grievance response was required.

7.  Defendant Georgia Schomauer ("Schomauer") was employed as Grievance officer ("GO") at SCC facility of IDOC and was ~~the~~ incharge of Grievance office during the period relevant to her in this complaint.

8.  Defendant Carmen Ruffin ("Ruffin") was employed as a Grievance officer at SCC facility of IDOC and was responsible to review emergency grievances of prisoners and report her findings and recommenda- tions to Warden Bailey during the period relevant to her in this complaint.

9.  Defendants, Eugene McAdory ("McAdory"), charles L Hinsley ("Hinsley"), and Alan M. Uchtman ("Uchtman") WACLS, were employed as warden of MCC facility of IDOC and they were responsible for overall operation of

mcc facility of IDOC during the period relevant
to them in this complaint.

10.    Defendants Debi middendorf ("middendorf"),
Tyone Murray ("Murray") and Verry Goforth
(to "Goforth") were employed as Grievance officer
at mcc facility of IDOC and were responsible to
review and report their findings and recommen-
dation to on prisoners' grievances to the CAO
of a mcc during the period relevant to them in this
complaint.

11.    Defendant
    Chaplain Keim was employed as senior chaplain
at mcc facility of IDOC and was responsible to
review prisoners' request for religious diet and
make decisions during the period relevant to him
in this complaint.

12.    Defendant J. Winters ("Winters") was employed
as chief food staff supervisor at mcc facility of
IDOC during the period relevant to him in this
complaint.

13.    Defendant Spiller was employed as Assistant
Warden of programs at mcc facility of IDOC during
the period relevant to him in this complaint.

14.    Defendant F Lawrence ("Lawrence") was employed
as correctional counselor of mcc facility of
IDOC and was responsible to resolve grievances of
prisoners assigned to him in a reasonable and

impartial manner before it was submitted to grievance office during the period relevant to him in this complaint.

15.    Defendants Major Jaenkee, Major Mauė, Major martin were employed as major at mcc facility of IDOC during the period relevant to them in this complaint

16.    Defendants Donald N snyder Jr ("snyder") and Roger E Walker Jr ("walker") were employed as Director of IDOC and they were overall incharge of the operation of all IDOC facilities during the period relevant to them in this complaint.

17.    Defendants John Doe I, John Doe I, John Doe III, John Doe IV, John Doe V, John Doe VI were employed by IDOC during the period relevant to them in this complaint and have signed the name of Director of Donald N snyder Jr, (in doc. SMA-22 and SMA-227), Director Roger E Walker Jr. (in doc. SMA-512, warden Eugen McadoRy (in doc. SMA-270-D), warden charles C Hinsley (in doc. SMA-292) warden Alon Uchtman (in doc. SMA-508), warden Uchtman (in Doc. SMA-524) respectively

18.    Defendants Donald N snyder, wilson, Andreur N. ("wilson") and cocke, michael R ("cocke") were employed as Adjustment committee members at mcc facility of IDOC during the period

relevant to them in this complaint. Mr. Wilson was also the chairperson of the Adjustment committee.

19. Defendant John Doe VII was employed as chief legal counsel of IDOC and he was responsible to give legal advice consistent with State and Federal laws to the Director of IDOC, wardens of IDOC facilities, and to Defendants who are IDOC employees.

20. Defendants Baron K. Fairschild ("Fairschild") and John Doe VIII were employed at office of Inmate issue in Springfield, IL by IDOC and they were responsible to review grievance appeals of prisoners in an impartial manner and report their findings and recommendations to the Director of IDOC. Defendant John Doe VIII had ruled in doc. SMA-270 on the behalf of the Director.

21. Defendant John Doe IX was employed as nurse at health care unit of MCC facility of IDOC during the period relevant to her in this complaint. She had taken DNA specimen of Plaintiff on 12-29-04 and on 1-12-05.

22. Defendant Lt. C. Pasnell ("Pasnell"), John Doe X, and John Doe XI were employed as Lietenants at MCC facility of IDOC during the period relevant to them in this complaint. Their actions are described in paragraphs F. 17 and F. 18 on pages 33-34.

23. Defendant CTDT Diercks was employed at office of BOI at MCC facility of IDOC during the period relevant to him in this complaint.

Page 8 of 59

24. Actual name of the Defendants named as "John Doe" is not known to plaintiff at this time.

25. All the Defendants except Director Walker and Warden Uchtman are being sued in their individual capacity.

26. Director Walker and Warden Uchtman are being sued in their individual capacity ~~both~~ and offical capacity.

27. All the Defendants have acted under color of law at all times relevant to this complaint.

## V. STATEMENT OF FACTS

DOCUMENTS ATTACHED: ~~ABBREVIATIONS USED~~

| | | | |
|---|---|---|---|
| SMA-20 | SMA-220 | SMA-506 | SMA-526 |
| SMA-22 | SMA-220-D | SMA-508 | |
| SMA-101 | SMA-292 | SMA-512 | |
| SMA-220-A | SMA-419 | SMA-516 | |
| SMA-222 SMA-265 | SMA-421 | SMA-524 | |

ABBREVIATIONS USED:

AWP = Assistant Warden of Programs

BOI = Bureau of Identification

CAO = Chief Administrative Officer

GO = Grievance officer

HCU = Health Care Unit

IDOC = Illinois Department of Corrections

MCC = Menard Correctional Center

SCC = Statesville Correctional Center

A. Perpetration of "forgery" or its "conspiracy" by the Directors of IDOC and by wardens of IDOC facilities including but not limited to by Defendants.

1. Under 720 ILCS 5/17-3 "forgery" is a class 3 felony.

2. At common law "forgery" is the false making or materially altering with intent to defraud of any writing which if genuine, might apparently be of legal efficacy or or foundation of legal liability. _People v. Mau_, 36 N.E. 2d 235, 327 Ill. 99.

3. An intent to defraud means an intention to cause another to assume, create, transfer, alter, or terminate, any right, obligation or power with reference to any person or property. 720 ILCS 5/17-3 (6).

4. For conviction of forgery intend to defraud need not be 100% successful.

5. A "civil conspiracy" is a combination of two or more persons acting in concert to commit an unlawful act, or to commit a lawful act by unlawful means, the principal element of which is an agreement between the parties to inflict a wrong against or injury upon another and an overt act that results in damage.

6.  Under 720 ILCS 5/8-2 a person convicted of a conspiracy may be fined or imprisoned or both, upto the maximum provided for the offense which is object of the conspiracy.

7.  "Forgery" or its "conspiracy" was perpetrated by the following Defendants:

a. Doc SMA-512 was signed by JOHN DOE I as designee of director walker forging the name of Director Roger E Walker Jr concealing his own identity as was authorized by Director Walker

b. Dec SMA-22 and SMA-222 were signed by JOHN DOE II as designee of Director snyder forging the name of Director Donald N. snyder Jr concealing his own identity as was authorized by Director snyder.

c. Doc SMA-276-D was signed by JOHN DOE III as designee of warden McAdory forging the name of Warden Eugene McAdory concealing his own identity as was authorized by warden McAdory and by Director Walker

d. Doc SMA-292 was signed by JOHN DOE IV as designee of warden Hinsley forging the name of Warden Hinsley Charles C. Hinsley concealing his own identity as was authorized by warden Hinsley and by Director Walker.

e. DOC SMA-568 and SMA-524 were signed by
JOHN DOE V      and by  JOHN DOE VI
as designee of Warden Uchtman forging the name of
Warden Alon Uchtman concealing their own
identity as was authorized by Warden Uchtman
and by Director Walker

f. DOC SMA-22 and SMA-22A-A were signed
by AWP Catching as designee of Warden Bailey
forging the name of Warden Kenneth R. Bailey
concealing his own identity as was authorized by
Warden Bailey and by Director Snyder

8.    all the documents mentioned in paragraph 7
were documents of legal efficacy or foundation
of legal liability of the signers of those
documents

9.    The motives of Defendants and others like them
behind this conspiracy of forgery were as follows:

a. Prisoners including Plaintiff would assume
that their grievances were denied by their warden
and their grievance appeals were denied by the
Director of IDOC.

b. They may sue, as was done by Plaintiff, to
their warden and Director of IDOC for their
deliberate indifference for violation of legal
rights alleged in their grievances

Page 12 of 59

c. if and when sued by a prisoner, Defendant wardens and Directors would escape their supervisory liability by

(1) claiming that grievances of plaintiffs were denied by their designees; and by

(2) claiming that they had no personal knowledge and information about allegations made by plaintiffs in their grievance and in their grievance appeals;

as was done by warden Briley in his affidavit (doc. sma-421)

10. As a result of this conspiracy of forgery Plaintiff has suffered the following injury:

a. he lost the opportunity to sue AWP Carching and JOHN DOE II _____ in Agrawal v. Briley, et al, and hold them accountable for violation of legal rights of Plaintiff

b. Plaintiff is incurring substantial unnecessary expenses in his litigation

c. Full extent of plaintiff's injury is not known at this time.

11. Mr. Comberson had participated in this conspiracy of forgery by not filing answer to Plaintiff's complaint and by not answering discovery in Agrawal v. Briley, et al, until time to sue Mr. Carching was expired.

B.  Perpetration of "Fraud" or its "Conspiracy" by the Defendants.

1.  In its general sence, "fraud" means anything calculated to deceive, including all acts, omissions and concealment involving a breach of legal or equitable duty, trust or confidence resulting in damage to another. _Majewski v. Gallina_ 160 N.C. 2d 263, 17 Ill. 2d 92

2.  Following statements were made by Mr. Lambertson either on his own behalf or on the behalf of one or more clients; in _Agrawal v. Bailey, et al._ Case # 02C 6807:

a.  With Defendants motion to stay proceedings filed on 5-7-03, in _Agrawal v. Bailey, et al._, a statement of certificate of service under oath was filed by Mr. Lambertson on his own behalf.

b.  With Defendants' motion to strike motion for summary Judgment and/or to discovery filed on 3-18-04, in _Agrawal v. Bailey, et al._, another statement of certificate of service under oath was filed by Mr. Lambertson on his own behalf.

c.  In Defendants' response to Plaintiff's motion for contempt of court order dated 4-17-04, a statement that Mr. Anthony Davis was personal property officer (John Doe) who had issued notice of disposal (doc. sma-161) was made by Mr. Lambertson with the knowledge and consent of his client Mr. Bailey.

d.   In Defendants' Answer to Second Amended complaint (Ans1) filed on 1-23-04, a statement of denial of knowledge and information of the fact that Ms. Davis was personal property officer, who had signed issued notice of disposal (doc. SMA-161) was made by Mr. Lamberson on the behalf of his client Ms. Bailey with his knowledge and consent.

e.   In Defendant's Answer to Second Amended complaint filed on 5-21-04, a statement for denial of the fact that Ms. Davis was personal property officer, who had issued notice of disposal (doc. SMA-161), was made by Mr. Lamberson on the behalf of his client Ms. Davis with the knowledge and consent of Ms. Davis.

3.   Following statements were prepared by Mr. Lamberson to be made by his clients, in Agrawal v. Bailey, et al, case # 02 c 6807, Ms. Bailey, Ms. Peterson and/or by chaplain Keim of SCC in their affidavits dated 3-12-04 filed in the court.

a.   According to Rule 425.70, in order to receive a religious diet, inmate must obtain a letter from a faith representative which states that they are a member or practitioners of the faith, and the religion requires adherence to a particular diet and the specific requirements of the diet. It is the inmates' responsibility to obtain this letter, according to the Rule."

3      b  Department rule 425 is applied to all inmates
equally. All are required to provide the same docu-
mentation from faith leaders if they are requesting
a religious diet. The reason for the requirement is
to assist in the management of the dietary department
as there is the potential for a special diet request
from any of the inmates practicing various religions."

4      The statements mentioned in paragraph 2-3 of this
section

a  were statements of material nature as oppose
to the opinions of Ms. Cumbertson, Ms. Bailey, chaplain
Peterson, or chaplain keim; or Ms. Davis.

b  were all untrue statements;

c  The statements were known by Ms. Cumbertson,
Ms. Bailey, ~~and~~ chaplain Peterson, and chaplain keim, <sup>& Ms Davis</sup> to
be untrue, believed by them to be untrue, or were made
by them with culpable ignorance of their truth or
falsity;

d  were made by them for the purpose of relience
by the plaintiff and by court

e  plaintiff and the court relied upon the untrue
statements prepared by Ms Cumbertson and to made by Ms DAVIS,
Ms Bailey, chaplain Peterson, and chaplain keim in
their affidavits file in the court

5      As a result of untrue statements made by the
forementioned defendants following inquiries were

suffered by the plaintiff:

a. In Agrawal v. Bailey, et al, 02 c 6802, plaintiff sued the wrong defendants.

b. Plaintiff lost opportunity to sue personal property officer who had issued notice of disposal (doc sma-061) and had confiscated plaintiff's norelco razor with trimmer in violation of legal rights of plaintiff and hold personal property officer accountable.

c. Plaintiff suffered substantial litigation expenses unnecessarily.

d. Plaintiff had suffered mental frustration and emotional distress.

e. Full extent of plaintiff's injuries is not yet known.

c.    Perpitration of "extortion with threat" by Defendants, and conspiracy for it, by Defendants

1.    Fear of economic loss can support extortion conviction. 18 U.S.C.A. § 1951(6); U.S v. Sturman, 49 F.3d 1275 (7th Cir. (Ill.) 1995)

2.    Sufficient nexus with interstate commerce supported Hobbs Act conviction for state officer's receipt of bribe; business firm victim of the bribery customarily purchased or obtained materials or supplies a component of which came from outside the state in which he was located. 18 U.S.C.A § 1951; U.S v. Hocking, 860 F.2d 769, & rehearing denied, (7th Cir. (Ill.) 1988)

3.    The word "extortion" and "blackmail" are synonymous. SHA. ch 38 § 246-1; Heck v. Schupp, 68 N.E.2d 464, 394 Ill. 296, 167 A.L.R. 232 (Ill. 1946)

4.    "Extortion" through threats to expose one as a former convict is commonly considered as one of the forms of "Blackmail." People v. Mahumed, 44 N.E.2d 911, 381 Ill. 81 (Ill. 1942)

5.    Federal extortion statute prohibits public official from exploiting victim's fear through both threatening positive action that will harm victim or threatening to withhold official action that will result in some form of harm being visited upon

victim. 18 U.S.C.A. §§ 1951, 1951(b)(2); U.S. v. Davis, 890 F.2d 1373, @(7th Cir. (Ill.)(1989), certiorari denied 110 S.Ct. 1165, 493 U.S. 1092, 107 L.Ed 2d 1068.

6.  Through doc. SMA-516, Plaintiff was told by mr. Lambertson as follows:

a. "I have received authority from chief Counsel [JOHN DOE VII] of the Illinois Department of Corrections in order to settle above referenced matter."

b. "The Department is willing to pay you $499.99 to settle the above referenced case. The reason for this figure is that the Crime victims Asset Recovery Act requires notification to the victim of your crime of any award over $500.00 (See 235 ILCS 5/13-202.1(d)). The Act requires that the CDOC notify the State's Attorney of the county in which plaintiff was convicted of his crime within 14 days of any settlement, verdict or judgment in excess of $500.00."

c. "The settlement would require no entry of judgment against Defendants, and would, of course remain confidential."

                        (all emphasis added)

7.  On the behalf of CDOC in conspiracy with chief counsel of Illinois Mr. Lambertson had attempted to extort a favorable settlement of mere $499.99 that would require no entry of judgment

against Defendants and would ... remain confi-
dential, by threatening to inform victim of
plaintiff through the state's Attorney who had
obtained Plaintiff's conviction if Plaintiff
would demand in settlement or would try to win
more than $500.00 in by trial.

8.   Use of 735 ICCS 5/13-202.1(d) by IDOC through
its legal counsels and by Illinois Assistant Attorney
Generals for the purpose of extortion of a confidential
favorable settlement, without entry of any judgment
against IDOC employees, from prisoner plaintiff's
is a very common practice.

9.   Crime victims do not benefit from this statute
only IDOC, its legal staff and Illinois Assistant
Attorney Generals benefit from 735 ICCS 5/13-202.10

10.   From the fear of being sued, Plaintiff was
compelled to reduce his demands for settlement
substantially.

11.   Full extent of Plaintiff's injury is not yet known.

12.   Plaintiff is involved into interstate commerce
as follows:

 a. very often he purchases legal, spiritual, medical,
and english books from vendors located outside
Illinois.

 b. very often he purchases commissary items that

come in from outside of Illinois.

    c. Whenever he can afford, he donates money to charitable organizations located outside state of Illinois also.

    d. Whenever he can afford, he sends money to his family members located outside state of Illinois.

13.    IDOC encourages its employees and administrators to violate legal rights of prisoners in its custody by following actions or omissions:

    a. By not holding its employees accountable for the violation of legal rights of prisoners in any form or manner even when willful official misconduct towards violation of Department Rules and violation of legal rights of prisoners by IDOC employees is proven in a court of law.

    b. By defending IDOC employees in individual capacity lawsuits against them for their willful official misconduct towards legal rights of prisoners at $0 cost to wrongdoer employees in unlimited number of lawsuits unlimited number of times.

    c. By paying from tax payers' money 100% of settlement on behalf of its employees and 100% of judgment against its employees even in individual capacity lawsuits against them in unlimited number of lawsuits unlimited number of times.

D. 735 ILCS 5/13-202.1 VIOLATES EQUAL PROTEC-
TION OF LAW AND IS DESIGNED TO EXTORT
FAVORABLE SETTLEMENT BY THREATENING TO
INFORM VICTIMS OF PRISONER PLAINTIFFS WHO
DEMAND ~~OR OBTAIN~~ <sup>IN</sup> SETTLEMENT OR OBTAIN A
JUDGMENT AWARD IN EXCESS OF $500.00/100.

1. The statute violates equal protection
clause because it provides for IDOC to
notify a crime victim when his or her
offender obtains a settlement or judgment
award in the offender's favor against IDOC
but not where the offender comes into
money in any other way.

2. The statute divides convicted offenders
into two different classes.

3. One class of convicted offenders (class A)
are those who themselves are victim of IDOC
employees, while they were acting under the
color of state law, and are able to bring
successfully a meritorious legal claim in
a court of law for a substantial amount of
damages in their favor against IDOC or its
employees.

ni: substantial means more than $500.00/100
with no upper limit.

4.   Another class of convicted offenders are those (class B) who obtain substantial amount of money in any other way.

5.   With regard to crime victims' Asset Recovery members of class A and class B are similarly situated.

6.   735 ILCS 5/13-202.1 provides for IDOC to to treat similarly situated convicted offenders of class A and class B dissimilarly without any rational basis for dissimilar treatment.

7.   735 ILCS 5/13-202.1 is designed for the following illegal purposes as is being widely used by IDOC exactly for these illegal purposes:

   a.   Permit IDOC employees in covert to violate freely legal rights of prisoners by (1) not holding them accountable for their official misconduct for their willful violation of legal rights of prisoners; (2) By defending IDOC employees in the court of law for such violation at zero cost to employees and at 100% cost to innocent tax payers; (3) by paying 100% of settlement or judgment award in favor of convicted offenders against IDOC

employees from for money.

5. If and when a convicted offender brings a meritorious claim in a court of law for a substantial amount of damage against IDOC employees, which IDOC cannot win, then use 735 ICCS 5/13-202.1 (a) as a weapon to extort a favorable settlement of mere $499.99 without entry of any judgment against IDOC employee by threatening convicted offender plaintiffs to inform their victims through state's attorney who had obtained their conviction, if they demanded more than $500.00 in settlement or won a judgment for amount greater than $500.00.

8. From the fear of loosing everything they may win through trial and from the fear of expenses in defending civil lawsuits brought by their one time victim.

a. convicted offender plaintiffs accept the settlement offer of 499.99 from IDOC that is confidential without entry of judgment against their victimizer defendant IDOC employees even when they truely believe that their injuries are worth more than five or six digits damage award; and

b. they are detered from filing any future

Page 24 of 59

lawsuit against their IDOC employee victimizer because total expense of winning a lawsuit or getting a settlement of $499.$\frac{99}{100}$ may exceed $500.$\frac{00}{100}$

c. There is always risk of loosing in a lawsuit specially if plaintiff is a pro se, and/or prisoner.

9. victims of convicted offenders do not benefit from 735 ILCS 5/13-202.1(d) because of the following:

a. IDOC uses it for the purpose of extorting a confidential settlement of $499.$\frac{99}{100}$ without entry of judgment.

b. Judgement awards entered in favor of convicted offenders are public record and ~~they~~ victims themselve can find the complete details of those entered judgment award without help of IDOC.

10. This statute is designed for and being used by IDOC to perpetually victimize one time convicted offender by exploiting their fear of being sued by their victims, and loosing every thing they may otherwise own.

11. This statute discourages one time convicted offenders from seeking justice no matter how many times and in how many ways their legal rights are violated by IDOC employees, and no matter how much injuries they suffer as a result of those violations.

Page 25 of 59

E   perpetration of "violation of plaintiff's right to exercise his religion" or its "conspiracy" by Defendants

1.   sincerely held religious beliefs are protected by (a) state constitution, (b) RFRA?C, (c) First Amendment to U.S. Constitution, and by (d) RLUIPA

2.   plaintiff has right to receive lacto-vegetarian diet required in his religious practice.

a   religion of plaintiff is Hindu (Vaishnava).

b   religious practice of plaintiff requires to consume lacto-vegetarian diet in which meat, fish, poultry, and egg are prohibited.

c   beef is strictly prohibited in religious practice of plaintiff.

d   Dairy and Honey are essential part of plaintiff's religious diet.

e   plaintiff sincerely follows dietary rules of his religious practice

f   knowingly plaintiff does not eat any food contaminated by food prohibited in his religious practice

g   all components of lactovegetarian diet has been available in all RDOC facilities including SCC and MCC.

3.   After a written request from plaintiff for lacto-vegetarian diet was received by chaplain Keim, plaintiff was approved for by chaplain Keim for vegan diet required in Black-Hebrew-Israelite religion.

4.     By this conduct chaplain Keim had violated Establishment of Religion clause of First Amendment to U.S. constitution.

5.     Such violation of establishment of religion clause was authorized by Directors and wardens of IDOC facilities including but not limited to by Directors Snyder and Walker, Wardens Briley, McAdory, Hinsley, and Uchtman

6.     After 2-24-03 Plaintiff was removed from approved religious diet (vegan) for no justified reason by Ms. Winters.

7.     This removal of plaintiff from approved religious diet for no justified reason was was authorized by AWP Spiller, Wardens McAdory and Hinsley or Uchtman and by Directors Walker.

8.     This removal and authorization was the result of their conspiracy with chaplains Peterson, Warden Briley and Ms. Combierton.

9.     The motive behind this conspiracy was to strengthen fraudulent statements mentioned in paragraph 3.3 on p.15-16 for illegitimate defense of chaplain Peterson and Warden Briley in Agrawal v. Briley, et al Case No. 02 C 6807.

10.    Chaplain Keim had participated in this conspiracy by refusing to reapprove plaintiff's

request for religious diet, for no justified reason.

11.    Counselor Lawrence and Go Middendorf had participated in this conspiracy by agreeing with Ms Winters and Chaplain Keim and by ~~returning~~ denying Plaintiff's grievance on behalf of warden as authorized by him.

12.    Ms. Fairchild and John Doe VIII had participated ~~by~~ in this conspiracy by denying Plaintiff's grievance appeal ~~on was~~ on behalf of ~~warden~~ DIRECTOR as was authorized by Director Walker.

13.    Plaintiff's religion was given unequal treatment. See doc SMA-265.

a.    In conspiracy with Ms. Combertson, Chaplain Peterson and Warden Bailey a special "GUIDELINES AND STIPULATIONS OF THE RELIGIOUS DIET PROGRAM" was designed by Chaplain Keim when Plaintiff reapplied to him for approval of a religious diet to him.

b.    This form was never used (1) before Plaintiff had reapplied for approval of a religious diet and (2) after plaintiff stopped applying for religious diet

c.    Even when this form was being used for very short period of time, muslim prisoners were not required to sign this form in order to receive

pork-free diet required in their religious-faith.

d. muslim prisoners were provided without any request and without any guidelines and stipulations pork-free diet required in muslim religion and they were free to eat pork or vegan food if and when they wanted

e. most of the conditions in ¶ doc. sm4-265 (1) violate procedural due process, (2) equal protection of law, and (3) have no rational relationship with any legitimate penological interest

f. these conditions are were arbitrarily used and randomly used as a weapon (1) for refusal to approve and (2) to terminate already approved religious diet of arbitrarily chosen inmates by chaplain keim and by mr. winters

g. such arbitrary actions were permitted or agreed by defendants mentioned in this section of complaint

h. Even DR 425.70 which governs religious programs treats gives preferential treatment to muslim religions compared to other religions whose followers are in minority in cdoc facilities

i. This unequal treatment of religions by cdoc has no rational relationship with any legitimate

penological interest and violates (1) Establish-
ment of religion clause and (2) Equal Treatment
of religion clause of First Amendment to U.S.
constitution.

j. muslims are given preferential treatment
because (1) most muslim prisoners are of Black
and (2) they file more law-suits for their reli-
gious rights than any other ~~immates~~ religions'
prisoners.

k. IDOC recognizes right to receive religious
diet of (1) muslim religion, (2) Black Hebrew
Israelite religion, (3) Jewish religion, and (4)
christian religion only.

l. This policy of IDOC is implemented by the
Defendants mentioned in this section.

m. This policy has no rational relationship
with any legitimate penological interest.

n. plaintiff's was treated differently by
Defendants because he does not belong to a religion
preferred by them and by IDOC.

14.  As a result of violation of right to exercise his
religion plaintiff suffered from pain of hunger,
mental frustration and emotional distress.